**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | * | |
| **SHEILA BOWLING,** | * | |
| **Plaintiff** | * | |
| **v.** | * | **CIVIL NO. JKB-16-3298** |
| **HUMANIM, INC.** | * | |
| **Defendant** | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM**

Plaintiff Sheila Bowling initiated this action by filing a complaint against her former employer, Defendant Humanim, Inc., alleging discrimination and retaliation in violation of 42 U.S.C. § 1981.  (Compl. ECF No. 1.)  Defendant's motion to dismiss (ECF No. 4), has been fully briefed (ECF Nos. 7, 8), and no hearing is necessary, Local Rule 105.6 (D. Md. 2016).  For the reasons stated below, Defendant's motion will be granted in part and denied in part.

*I.*      *Standard for Dismissal for Failure to State a Claim*

A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  An inference of a mere possibility of misconduct is not sufficient to support a plausible claim.  *Id.* at 679.  As the *Twombly* opinion stated, "Factual allegations must be enough to raise a right to relief above the speculative level."  550 U.S. at 555.  "A pleading that offers 'labels and conclusions' or 'a

formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557). Although when considering a motion to dismiss a court must accept as true all factual allegations in the complaint, this principle does not apply to legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555.

## II. Allegations of the Complaint[1]

In December of 2014, Plaintiff, an African American of Panamanian descent, was hired by Defendant for the position of Director of Human Resources. (Compl. ¶ 6.) On March 9, 2015, her supervisors gave her a "satisfactory" performance evaluation. (*Id.* at ¶ 10.)

On March 30, 2015, R.C.,[2] Defendant's Vice President of Human Resources, allegedly instructed Plaintiff to place an African American employee, S.W., on a Performance Improvement Plan. (*Id.* at ¶ 12.) Plaintiff claimed S.W.'s performance was satisfactory but observed that a white employee, J.L., committed significant infractions without being subject to any discipline. (*Id.*) Accordingly, Plaintiff objected to R.C. that this discrepancy appeared to be racially-motivated. (*Id.* at ¶ 13.)

On April 6, 2015, Plaintiff allegedly complained to L.S., Defendant's Chief Operating Officer, concerning racism in Defendant's organization. (*Id.* at ¶ 15.) In that conversation, Plaintiff recounted an incident in which R.C. threw fifteen dollars at an African American staff member, saying "this is all you are worth to me." (*Id.*) Plaintiff also indicated to L.S. that Plaintiff had not received the same training opportunities enjoyed by her predecessor, who was white. (*Id.* at ¶ 16.)

---

[1] The facts are recited here as alleged by Plaintiff.

[2] In order to preserve their privacy, the Court will anonymize the identities of all persons who are not parties to the instant suit.

On April 24, 2015, Plaintiff alleges that during a conference call with R.C. and two other white executives, Plaintiff protested the disparate discipline of two of Defendant's employees. (*Id.* at ¶ 17.)  J.J., a white manager, had instigated an incident in which E.C., an African-American supervisor, responded with inappropriate comments.  (*Id.* at ¶ 18.)  Those involved in the call contemplated termination for E.C., but no discipline at all for J.J.; Plaintiff protested this course of action as racist.  (*Id.*)

On April 30, 2015, Plaintiff was placed on a Performance Improvement Plan.  (*Id.* at ¶ 19.)  On May 4, 2015, Plaintiff complained to L.S. that such a disciplinary measure was in retaliation for her speaking out against discriminatory conduct.  (*Id.* at ¶ 20.)  Defendant terminated Plaintiff's employment on May 14, 2015.  (*Id.* at ¶ 21.)

## III.  *Analysis*

Plaintiff brings two claims under § 1981: Count I is for discrimination, and Count II is for retaliation.  (Compl. ¶¶ 22–26.)  Because Plaintiff alleges facts sufficient to state a plausible claim for relief only under her retaliation claim, Defendant's motion to dismiss will be granted with respect to Count I; it will be denied with respect to Count II.

### A.    **Count I: Discrimination**

Originally passed as part of the Civil Rights Act of 1866, § 1981 provides in pertinent part that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981 (2015).   In the employment context, courts analyze claims of racial discrimination brought under § 1981 according to the same requirements as those brought under Title VII of the Civil Rights Act of 1964.  *Gairola v. Va. Dept. of Gen. Serv.,* 753 F.2d 1281, 1285 (4th Cir. 1985).  Accordingly, a plaintiff bringing a claim of discrimination under § 1981

must allege that *because of her race*, her employer did any of the following: failed to hire her; discharged her; discriminated against her with respect to compensation, terms, conditions, or privileges of employment; or limited, segregated, or classified employees in any way that would tend to deprive her of employment opportunities or otherwise affect her status as an employee. 42 U.S.C. § 2000e-2(a) (2015). Thus, in order to survive a motion to dismiss, a complaint under § 1981 must allege facts allowing for a reasonable inference that an employer conducted any of the enumerated actions because of an employee's race. *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015).

Defendant's failure to provide Plaintiff with requested professional training opportunities is the *only* way in which Plaintiff alleges that she personally experienced disparate treatment on account of her race. (*See* Compl. ¶ 16; Pl's Opp'n 8, ECF No. 7.) To be sure, Plaintiff alleges that she is of a different race than her predecessor and that her predecessor received training that Plaintiff did not. However, the Complaint alleges no fact allowing for a plausible claim that Plaintiff's race was the reason she was not provided with such training.

In *McDonnell Douglas Corp. v. Green*, the Supreme Court laid out the requirements for a plaintiff to prove a prima facie case of discrimination.[3] 411 U.S. 792, 802 (1973). A plaintiff is not required to plead such a prima facie case in order to survive a motion to dismiss. *McCleary-Evans*, 780 F.3d at 584–85. Nonetheless, establishing a prima facie case of employment discrimination is ultimately about proving conditions that give rise to a permissible inference of discriminatory animus. *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 579–80 (1978). For that

---

[3] A plaintiff's establishment of a prima facie case of discrimination is the first of three steps in the well-known *McDonnell Douglas* burden-shifting framework. 411 U.S. at 802. If the plaintiff meets this initial burden of production, the defendant is next required to offer a legitimate, non-discriminatory reason for its action, before the burden finally returns to the plaintiff to show that the defendant's explanation is merely pretext to cover a discriminatory motive. *Id.* at 802, 804. This three-step process in an evidentiary standard, and is not directly applicable at the pleading stage. *McCleary-Evans*, 780 F.3d at 584.

4

reason, identifying the elements of a prima facie case is useful when evaluating whether a plaintiff has alleged facts allowing for a reasonable inference of discriminatory motive.  In the context of alleged discrimination through a denial of professional training, a prima facie case would require a plaintiff to prove that (1) she is a member of a protected class, (2) the employer offered training to its employees, (3) the employee was eligible for such training, and (4) the employee was denied training under circumstances allowing one to infer discriminatory intent on the part of the employer.  *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649–50 (4th Cir. 2002).

Applying these elements to the facts of the instant case, Plaintiff has pled facts to establish only the first two elements of a prima facie case, that is, she has claimed to be a member of a protected class (African American) and  indicated that Defendant provided training to at least one of its employees (Plaintiff's predecessor).  However, in addition to Plaintiff's failure to plead facts allowing an inference of discriminatory intent, she alleges nothing to show that she was eligible for the same training in which her predecessor participated.  For example, Plaintiff does not describe a training policy, identify the training her predecessor received, provide information on the respective backgrounds of herself and her predecessor to show the same training would have been relevant, or cite the point in her predecessor's tenure at which she received said training.[4]

While Plaintiff is not technically required to plead a prima facie case of discrimination, she is required to allege facts allowing a reasonable inference that she was denied training because of her race.  *See McCleary-Evans*, 780 F.3d at 584–85.  This she has not done.  Accordingly, Defendant's motion to dismiss will be granted with respect to Count I of Plaintiff's complaint.

---

[4] Plaintiff was only employed by Defendant for a total of six months.  (Compl. ¶¶ 6, 21.)

### B.     Count II: Retaliation

The Supreme Court has held that in addition to discrimination, § 1981 also prohibits acts of retaliation against a party for engaging in "protected conduct."   *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 457 (2008).   Claims of retaliation under § 1981 and under Title VII are analyzed according to the same substantive requirements.   *Jenkins v. Gaylord Entm't Co.*, 840 F. Supp. 2d 873, 880 (D. Md. 2012).   Thus, to state a case of retaliation, a plaintiff must allege that (1) she engaged in a protected activity, (2) her employer took an adverse employment action against her, and (3) the protected activity was the cause of the adverse action.   *Id.*

Opposing an "unlawful employment practice" is a protected activity.   *Cepada v. Bd. of Educ. of Balt. Cty.*, 974 F. Supp. 2d 772, 788 (D. Md. 2013).   Furthermore, an employee is protected when she opposes "not only ... employment actions [that are] actually unlawful . . . but also employment actions [she] reasonably believes to be unlawful."   *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 282 (4th Cir. 2015) (en banc).   Assessing the employee's "reasonable belief" involves a two-fold inquiry: whether the individual opposing the employment actions in question subjectively (*i.e.*, in good faith) believed the employer engaged in unlawful conduct and whether this belief was objectively reasonable in light of the facts. *Peters v. Jenney*, 327 F.3d 307, 321 (4th Cir. 2003).

As for the causation element, the fact that a plaintiff experienced an adverse employment action shortly after the employer learned the plaintiff engaged in a protected activity may, by itself, create an inference of causation, but only if "the temporal proximity [is] very close." *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).   The Fourth Circuit has not set forth a specific timeframe for what constitutes "very close."   *Bowman v. Balt. City Bd. of Sch. Comm'rs*, 173 F. Supp. 3d 242, 250 (D. Md. 2016).   Furthermore, even in cases where there is

insufficient temporal proximity between a protected activity and an allegedly retaliatory employment action to create an inference of causation, "courts may look to [events that might have occurred during] the intervening period for other evidence of retaliatory animus." *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007).

Plaintiff has pled facts satisfying all three elements of a retaliation claim. First, she alleges that she lodged three complaints with supervisors, each concerning a discrete discriminatory action by Defendants: (A) S.W. (African American) being disciplined when J.L. (white) exhibited more egregious conduct without receiving discipline; (B) receiving no training herself (African American) as compared to that enjoyed by the previous Director of Human Relations (white); and (C) the proposed termination of E.C. (African American) for inappropriate statements made to J.J. while J.J. (white) would experience no discipline for his role in instigating the conflict. She also claims to have complained about perceived illegal retaliation when she was placed on a Performance Improvement Plan days after having objected to the E.C.–J.J. incident. Given the facts alleged, it was objectively reasonable for someone in Plaintiff's position to believe that the conduct about which she complained was discriminatory (or retaliatory) and illegal, and there is no reason to doubt that Plaintiff had a corresponding subjective, good-faith belief. Accordingly, Plaintiff has sufficiently alleged that her complaints to her supervisors amounted to protected conduct, and has satisfied the first element of her retaliation claim.

Plaintiff's termination constitutes an adverse employment action, satisfying the second element of retaliation.

Finally, Plaintiff's termination occurred just six weeks after her first alleged protected activity, and only ten days after her final alleged protected activity. The events satisfy the

temporal proximity test, that is, they are close enough in time to infer that Plaintiff's complaints were the cause of her eventual termination.[5]   Plaintiff has thus satisfied the third and final element of her retaliation claim.

Plaintiff has pled sufficient facts to establish a plausible claim for retaliation for a protected activity under § 1981.  Accordingly, Defendant's motion to dismiss will be denied with respect to Count II of Plaintiff's complaint.

## IV.   *Conclusion*

For the foregoing reasons, Defendant's motion to dismiss will be granted in part and denied in part: it will be granted as to Plaintiff's claim of discrimination (Count I), and will be denied as to Plaintiff's claim of retaliation (Count II).  A separate order shall issue.


DATED this 21st day of February, 2017.

BY THE COURT:


_____/s/_____

James K. Bredar
United States District Judge

---

[5]   Even if sufficient temporal proximity was lacking, Plaintiff was also placed on a Performance Improvement Plan two weeks prior to her termination, which arguably amounts to further evidence of retaliatory animus given that event's closeness in time to her prior satisfactory evaluation, which was issued less than two months prior.